ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 MAR -9 AM 11: 33

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | |
|---|---|
| CHARLES D. LANGFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 605-073 |
| | ) |
| GLENN RICH, Warden, et al., | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The captioned matter, brought pursuant to 42 U.S.C. § 1983, is before the Court on Defendants' motions to dismiss (doc. nos. 3, 4 & 8), which the Court has converted to motions for summary judgment. (See doc. no. 10). Plaintiff opposes the motions. (Doc. no. 13). Defendants also request that discovery in this case be stayed pending a resolution of their motions for summary judgment. (Doc. no. 27). Plaintiff also opposes this motion. (Doc. no. 29).

For the reasons below, the Court **REPORTS** and **RECOMMENDS** that the motions for summary judgment (doc. nos. 3, 4, & 8) be **GRANTED**, that Defendants' motion to stay (doc. no. 27) be **DENIED** as **MOOT**, that Plaintiff's case be **DISMISSED** without prejudice for failure to exhaust administrative remedies, that an appropriate **FINAL JUDGMENT** be entered in favor of Defendants, and that this civil action be **CLOSED**.

## I. BACKGROUND

**A.     Plaintiff's Complaint**

In his complaint, Plaintiff avers that, while he was an inmate at Rogers State Prison ("Rogers"), in Reidsville, Georgia, Defendant Reginald T. Langston ("Langston") used excessive force against him on August 16, 2003, November 18, 2003, and May 9, 2004. (Doc. no. 1, p. 3). Defendants Deputy Warden R.D. Collins ("Collins") and Warden Glenn Rich ("Rich") allegedly condoned this behavior. (Id. at 5, 7-8). Plaintiff contends that he exhausted administrative remedies. (Id. at 3).

**B.     Defendants' Arguments**

On the other hand, Defendants argue that Plaintiff failed to file any grievance regarding the use-of-force incidents alleged in the complaint, and thus that Plaintiff failed to properly exhaust his administrative remedies prior to filing suit as required by Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a). Accordingly, Defendants argue that the instant suit should be dismissed. In support of this argument, Defendants have provided two affidavits from Ms. Sarah Draper, Manager of the Office of Investigations and Compliance for the Georgia Department of Corrections. See Draper Aff. I (attached to doc. no. 4) & Draper Aff. II (attached to doc. no. 17).

Ms. Draper provides that, pursuant to Georgia Department of Corrections Standard Operating Procedure ("SOP") IIB05-0001 § VI, Rogers has maintained an administrative grievance process that is available to all inmates. See Draper Aff. I, ¶¶ 6-10. According to Ms. Draper, Plaintiff did not pursue any administrative remedy regarding the beatings alleged in the complaint. See id. ¶¶ 12-13. Ms. Draper also provides that Plaintiff has filed only

2

three grievances while incarcerated: 1) an October 2, 2003 grievance complaining about a bad haircut, 2) an October 17, 2003 grievance regarding a separate incident of alleged abuse by Defendant Langston on "October 13, 2003," and 3) a grievance filed on August 24, 2004 regarding an allegation that Defendant Langston "harassed" Plaintiff for refusing to shave. See Draper Aff. II, ¶14. Ms. Draper also provides that Plaintiff was transferred to another prison on November 5, 2004. Id. ¶ 15.

## C.   Plaintiff's Response

In response, Plaintiff argues that he did not file grievances regarding the alleged beatings because it was "common knowledge" at Rogers that resort to the administrative process would be met with violent reprisals. (Doc. no. 13, p. 2). Thus, Plaintiff chose not to file a formal grievance because he was afraid. (Id. at 4). Consequently, Plaintiff argues that the administrative process was not really "available" to Plaintiff, and he cannot be deemed to have failed to exhaust administrative remedies under the PLRA. (Id. at 5).

In support of these allegations, Plaintiff proffers: 1) a profanity-laced statement from Plaintiff wherein he describes Defendant Langston's alleged use of excessive force on August 16, 2003, and Defendants' threats to retaliate if Plaintiff filed a grievance, see Pl.'s Ex. A; 2) another statement from Plaintiff wherein he further describes the alleged August 2003 excessive force incident, see Pl.'s Ex. B; 3) a third statement describing a November 18, 2003, incident during which Defendant Langston allegedly beat Plaintiff for not shaving, see Pl.'s Ex. C; 4) a fourth vulgarity-strewn statement from Plaintiff describing another alleged beating for not shaving on May 9, 2004, see Pl.'s Ex. D; 5) an affidavit from former corrections officer Tommy Cardell describing incidents of inmate abuse at Rogers, prison

3

counselors' attempts to discourage and prevent inmates from filing grievances, and Defendants' violent reprisals when inmates resorted to the administrative process, see Pl.'s Ex. E; and 6) a statement from inmate Gregory Bryant ("Bryant") describing Defendants' retaliation against him for filing grievances. See Pl.'s Ex. F.

**D.     The Administrative Grievance Process**

Therefore, the key issue in this case is whether Plaintiff has complied with § 1997e(a). Before assessing this question, it will be helpful to explain the grievance procedure used in the Georgia state prison system. In support of their motions, Defendants have filed the version of SOP IIB05-0001 § VI in effect at the time of the alleged use-of-force incidents. See Defs.' Ex. A; SOP IIB05-0001 § VI (Eff. date May 1, 2003)(attached to doc. no. 4).

Under then-existing SOP IIB05-0001 § VI(D), an inmate had five business days (a limit that could be waived for good cause) "from the date the inmate discovered, or reasonably should have discovered, the incident giving rise to the complaint" to file a grievance; the Warden then had thirty (30) days to review and respond to the grievance. Id. § VI(D)(5). Once the Warden provided a response, the inmate could appeal the response to the Office of the Commissioner by completing a Grievance Appeal Form and submitting it and the original grievance form to the inmate's assigned counselor or Grievance Coordinator. Id. § VI(D)(5) (k)-(n). The Commissioner's Office had ninety (90) days after receipt of the appeal to respond. Id. § VI(D)(5)(o). The grievance procedure terminated upon the issuance of a response from the Commissioner's Office. Id.

Having clarified the factual background of the case, the Court turns to the merits of

4

the motion for summary judgment.[1]

## II. DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that

---

[1] The Court is aware that SOP IIB05-0001 § VI was revised on June 1, 2004. See Hooks v. Rich, CV 605-065, doc. no. 5, Ex. 1, (S.D. Ga. Aug. 17, 2005), SOP IIB05-0001 § VI(D)(5)(Eff. date June 1, 2004); United States v. Rey, 811 F.2d 1453, 1457 n.5 (11th Cir.1987) ("A court may take judicial notice of its own records and the records of inferior courts."). Although there are several differences between the current version of the SOP and that in effect at the time of the alleged use-of-force incidents, the basic framework of the grievance process is essentially the same. See CV 605-065, doc. no. 5, Ex. 1, SOP IIB05-0001 § VI(D)(5)(Eff. date June 1, 2004). Of particular note, the current SOP retains a good cause exception to the timeliness requirements of the administrative process. See id. § VI(C)(2) & (D)(2)(Eff. date June 1, 2004).

[2] The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

5

demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.    Plaintiff's Failure to Exhaust Administrative Remedies**

As the exhaustion of administrative remedies is a prerequisite to filing suit under the PLRA, exhaustion is a threshold inquiry. The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Furthermore, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159

F.3d 1231, 1325-26 (11th Cir. 1998). Simply put, if an administrative remedy is "available," it must be exhausted. 42 U.S.C. § 1997e(a).

To properly exhaust his claims, an inmate must satisfy any and all procedural requisites, including "administrative deadlines." Johnson v. Meadows, 418 F.3d 1152, 1154 (11th Cir. 2005), *petition for cert. filed* (U.S. Sept. 8, 2005)(No. 05-6336). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Id. at 1159. Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, No. 05-10399, 2006 WL 122426, at *2 (11th Cir. Jan. 17, 2006) (citing Johnson, 418 F.3d at 1155); see also Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999)("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies."). Similarly, in order to exhaust all available administrative remedies, an inmate must pursue an administrative appeal if his grievance is denied. Moore v. Smith, 18 F. Supp.2d 1360, 1362 (N.D. Ga. 1998).

Here, Plaintiff concedes that he failed to pursue *any* administrative remedy regarding the incidents of excessive force alleged in his complaint prior to filing suit. Nevertheless, Plaintiff argues that no administrative remedy was "available" to him because the certainty of violent reprisal made administrative remedies "practically unavailable." (Doc. no. 14, p. 4). The argument is unavailing.

The Court is not persuaded by Plaintiff's argument that "general knowledge of [a] pattern and practice of brutally retaliating against inmates who file grievances" renders

administrative remedies "practically unavailable." (Id.). To accept such an argument would eviscerate the exhaustion requirement. First, to the extent Plaintiff raises a veiled argument that the grievance procedure at Rogers was inadequate or that resort to administrative remedy would have been futile, the Eleventh Circuit has foreclosed any such argument. Alexander, 159 F.3d at 1325-26.

Moreover, in Porter, cited *supra*, the Supreme Court held that the PLRA's exhaustion requirement applied even to a prisoner alleging that the use of excessive force was a "prevailing circumstance" at his place of incarceration. 534 U.S. at 532. Justice Ginsberg, writing for a unanimous Court, explained that a prisoner's allegations of "a prolonged and sustained pattern of harassment and intimidation by corrections officers," cannot serve to remove his case from the ambit of § 1997e(a). Id. at 530. Thus, the undersigned is not persuaded that Plaintiff's alleged "general knowledge" of incidents of excessive force or retaliation at Rogers served to render administrative remedies unavailable.

More importantly, although it is arguable that threats of violent reprisal can, under certain circumstances, render administrative remedies "unavailable" or otherwise justify an inmate's failure to pursue them, see, e.g., Hemphill v. New York, 380 F.3d 680, 686-91 (2d Cir. 2004), the Court is not persuaded that the instant case presents any such circumstances. Plaintiff was transferred to a new prison on November 5, 2004. Thus, any fear of reprisal from Defendants cannot justify Plaintiff's failure to seek leave to file an out-of-time grievance following his transfer. Simply put, Plaintiff's transfer negates his argument that he failed to file a grievance because he was afraid Defendants would retaliate.

Moreover, the record indicates that Plaintiff did file grievances regarding other

8

alleged events at Rogers, including two grievances against Defendant Langston for alleged incidents of excessive force and harassment not addressed in the instant complaint.[3] Given these facts, Plaintiff's claim that he was too afraid to resort to administrative remedy lacks credibility. The believability of Plaintiff's averment is further eroded by the fact that other inmates at Rogers who have recently brought excessive force claims against Defendants also filed grievances regarding their claims. See, e.g., Hooks v. Rich, CV 605-065 (S.D. Ga. July 13, 2005).

To conclude, it is abundantly clear that administrative remedies were (and are) in fact available to Plaintiff. Finally, the Court also notes that the presiding District Judge recently rejected Plaintiff's argument in a strikingly similar case brought by inmate Bryant against Defendants. See Bryant v. Rich, CV 605-064, doc. no. 38, *adopted by* doc. no. 51 (S.D. Ga. Jan. 23, 2006)(notice of appeal filed Feb. 9, 2006). Accordingly, the Court concludes that Plaintiff has failed to exhaust available administrative remedies with regard to any of his claims against Defendants.

Consequently, Defendants are entitled to summary judgment.[4] Nevertheless, the Court declines to recommend that the instant case be dismissed with prejudice. Cf. Johnson,

---

[3] The Court also staves off any argument that Plaintiff's grievances regarding Defendant Langston were sufficient to exhaust the claims in his complaint. Plaintiff's grievances pertained to Defendant Langston's alleged use of excessive force in October 2003 and "harassment" in August 2004--they did not address the claims in Plaintiff's complaint, which concern separate incidents in August 2003, November 2003, and May 2004. See Miller v. Tanner, 196 F.3d 1190, 1192 n.3 (11th Cir. 1999)(explaining that to properly exhaust an excessive force claim, prisoner must file a grievance pertaining to the specific incident alleged in the complaint); see also Herrera v. County of Santa Fe, No. 03-2099, 79 Fed. Appx. 422, 424 (10th Cir. Oct. 29, 2003)(explaining that purposes of § 1997e(a) would be "frustrated' if "a prisoner who has previously complained of abuse somehow has a free ticket to bring similar complaints in the future based on wholly separate incidents without complying with the prison's internal grievance process").

[4] The Court's conclusion in this regard pretermits consideration of Defendants' remaining arguments.

9

418 F.3d at 1157 (quoting Marsh v. Jones, 53 F.3d 707, 710 (5th Cir. 1995)) ("[w]ithout the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one"). It is the longstanding practice of the Court to dismiss cases such as this one without prejudice, in order that the prisoner plaintiff may attempt to properly exhaust administrative remedies. See, e.g., CV 605-064, doc. no. 51. Defendants have not requested that Plaintiff's case be dismissed with prejudice. Thus, although it is at least arguable that the Court has authority to dismiss Plaintiff's claims with prejudice for failure to exhaust administrative remedies, the Court determines that it would not be appropriate to do so at this time.

### III. CONCLUSION

For the above reasons, the Court **REPORTS** and **RECOMMENDS** that the motions for summary judgment (doc. nos. 3, 4, & 8) be **GRANTED**, that Defendants' motion to stay (doc. no. 27) be **DENIED** as **MOOT**, that Plaintiff's case be **DISMISSED** without prejudice for failure to exhaust administrative remedies, that an appropriate **FINAL JUDGMENT** be entered in favor of Defendants, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 9th day of March, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE